**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Paul Brown, et al., | No. CV-18-03894-PHX-DWL |
| Appellants, | **ORDER** |
| v. | |
| KA Fuciarelli, et al., | |
| Appellees. | |

Richard Paul Brown and Belinda Gail Brown (collectively, "the Browns") have filed a "Motion for Leave to Appeal." (Doc. 2.) As explained below, the motion will be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. The State-Court Proceedings

The Browns own a controlling interest in a company called Hot Salsa Interactive, LLC ("Hot Salsa"). (Doc. 6-6 at 6.) In 2014, Mr. Brown spoke with Kevin Fuciarelli ("Fuciarelli") about potentially investing in Hot Salsa. As part of these discussions, Mr. Brown sent an email to Fuciarelli stating: "Keep in mind that if you do decide to invest, I / Hot Salsa Interactive had federal contracts that I will not be able to discuss with you." (Doc. 6-6 at 41.) Fuciarelli agreed to invest in Hot Salsa but, after providing approximately $1 million, came to suspect he'd been defrauded. (*See generally* Doc. 6-6 at 47-48.)

In November 2016, Fuciarelli sued the Browns and Hot Salsa in Arizona state court. (Doc. 6 at 6.) The Browns denied the allegations and asserted counterclaims alleging that

Fuciarelli had harmed them by, *inter alia*, providing only half of the $2 million investment he'd originally agreed to provide. (Doc. 6-6 at 5-8.) Among other things, the Browns alleged that Fuciarelli had "cause[d] Hot Salsa to lose the ability to continue to be a contractor of the U.S. Government" and to "incur[] damages from the loss of business opportunities, in an amount . . . which is several millions of dollars at present value." (Doc. 6-6 at 8-9.)

One of the disputed issues in the state-court litigation was the extent to which Hot Salsa had preexisting "federal contracts." As part of the discovery process, Fuciarelli propounded interrogatories and requests for production that sought "all federal and nonfederal contracts to which Hot Salsa . . . was a party . . . ." (Doc. 6-6 at 35.) The Browns, however, refused to provide this information on the ground that "[t]he federal contract work performed by Hot Salsa . . . and Rick Brown is classified, and therefore details cannot be discussed or shared." (Doc. 6-6 at 69.) As a result, Fuciarelli filed a motion to compel. (Doc. 6-6 at 46-50.) In an order issued on September 5, 2017, the state-court judge granted the motion to compel and ordered the Browns to "[f]ully answer Interrogatory No. 1," which was the interrogatory seeking information about the federal contracts.[1]

B.  The Bankruptcy Proceedings

In January 2018, the Browns filed a Chapter 7 bankruptcy petition. This filing had the effect of halting the state-court litigation. (Doc. 6 at 7.)

In February 2018, Fuciarelli[2] filed an adversary complaint alleging the Browns' $1 million debt was non-dischargeable under 11 U.S.C. § 523(a)(2) because it had been procured via fraud. In their answer to the complaint, the Browns again alleged that Fuciarelli had caused them to suffer harm in the form of lost government contracts. (Doc. 6-7 at 5-6.)

---

[1]  *See* http://www.courtminutes.maricopa.gov/docs/Civil/092017/m7986114.pdf. This order is properly subject to judicial notice. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

[2]  Although the adversary complaint was filed by both Fuciarelli and "The Fuciarelli Group, LLC," the Court will, for ease of reference, refer to these parties as "Fuciarelli."

- 2 -

In May 2018, Fuciarelli propounded—as part of the bankrupcty case—interrogatories and requests for production that sought "all federal contracts to which Hot Salsa was a party" and "[a]ll documents relating to any government or federal contract to which you or Hot Salsa were a party since 2013." (Doc. 6-7 at 16, 18.)

In July 2018, the Browns (then acting *pro se*) filed written objections asserting that "[n]either K.A., Fuciarelli, The Fuciarelli Group, nor his legal counsel have authorization and/or the proper security clearance to request or obtain the" contracts and that Fuciarelli had not demonstrated "that any information requested of Defendants . . . will be of any use as part of this bankruptcy proceeding." (Doc. 6-7 at 31.)

On October 24, 2018, the bankruptcy court held a hearing to address this dispute. (Doc. 6-4 at 2-25.) During this hearing, the Browns (now represented by counsel) argued the discovery request was improper in part because Fuciarelli's adversary complaint didn't specifically allege he'd relied on the presence of the purported federal contracts when deciding to make the $1 million investment. (Doc. 6-4 at 12-13.) At the conclusion of the hearing, the bankruptcy court ordered Fuciarelli to file an amended complaint containing those allegations (*see* Doc. 6-4 at 17-18) and further ordered that, "as to this discovery dispute, I am going to order that all of the Defendant's responses be submitted to the Court on an in-camera inspection that is under seal. . . . Is there a confidentiality agreement? I want to see it. Is there a federal contract? I want to see it." (Doc. 6-4 at 19.)

The following day, on October 25, 2018, the bankruptcy court issued a written order memorializing this ruling. (Doc. 2 at 10-12.) It provides in relevant part:

> IT IS ORDERED that Plaintiffs' motion to compel full and complete responses to Plaintiffs' Discovery Requests is GRANTED. [¶] IT IS FURTHER ORDERED that Defendants shall submit to Plaintiffs full and complete written responses, as well as responsive documents (as defined in the requests), to the Discovery Requests no later than November 13, 2018 (the "Amended Discovery Responses"). To the extent that Defendants contend that they are legally prohibited from providing any portion of the Amended Discovery Responses directly to Plaintiffs, the legal basis for the contended legal prohibition must be set forth in the Amended Discovery Responses and such portions shall be supplied solely to the Court for an *in camera review* so that the Court may make a determination as to the validity

of Defendants' contentions.

(*Id.* at 11.) The Browns did not comply with this order. Instead, on November 6, 2018, the Browns filed the motion now pending before the Court. (Doc. 2.)

## ANALYSIS

In their motion, the Browns ask this Court to immediately review, and overturn, the bankruptcy court's discovery ruling. (Doc. 2.) They argue (1) Fuciarelli didn't mention the federal contracts in his initial adversary complaint or pre-trial statement and thus "waived" any ability to make an issue of the contracts, (2) the bankruptcy court shouldn't have authorized Fuciarelli to file an amended complaint because Fuciarelli engaged in "undue delay and bad faith" and the amendment will be "drastically prejudicial," and (3) because the bankruptcy judge and their counsel both lack an appropriate security clearance, complying with the discovery ruling will effectively force them to commit a federal crime and lose their counsel of choice. (Doc. 2 at 4-7.)

In his response, Fuciarelli argues that requests for interlocutory review of discovery orders are disfavored and should be granted only in extreme cases. (Doc. 6 at 3-5, citing 28 U.S.C. § 158(a)(3) and *U.S. Rubber Co. v. Wright*, 359 F.2d 784 (9th Cir. 1966).) Fuciarelli further argues the Browns can't meet this high standard because (1) their motion doesn't specifically identify "the question of law that justifies an interlocutory appeal" and doesn't establish why this "unidentified issue is subject to a substantial difference of opinion," as required by 28 U.S.C. § 158(a)(3), and (2) their arguments fail on the merits because the bankruptcy court acted well within its discretion in authorizing the filing of an amended complaint and ordering the production of the federal contracts on an *in camera* basis. (Doc. 6 at 10-18.)

The Court will deny the Browns' motion. Under 28 U.S.C. § 153(a)(3), the "district courts of the United States . . . have jurisdiction to hear appeals . . . with leave of the court, from . . . interlocutory orders and decrees . . . of bankruptcy judges . . . ." *Id.* District courts must "look for guidance to standards developed under 28 U.S.C. § 1292(b) to determine if leave to appeal should be granted." *In re Belli*, 268 B.R. 851, 858 (9th Cir.

B.A.P. 2001). And under 28 U.S.C. § 1292(b), interlocutory review is appropriate only when the challenged order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.*

The Browns cannot satisfy these standards. The bankruptcy judge's decision to allow Fuciarelli to amend his complaint was a fact-bound decision that appears to this Court, based on the limited material before it, to have been entirely correct given the Browns' prior gamesmanship. This is the antithesis of the sort of decision that justifies interlocutory review. *Cf. In re Lebbos*, 2008 WL 11387029, *2 (E.D. Cal. 2008) ("[A]ppellants cannot establish these requisite elements to justify appeal of an interlocutory order. There is no controlling issue of law in this case, as the bankruptcy court's decision to enter default as a terminating sanction was based primarily on factual findings concerning appellants' failure to comply with discovery requests. Moreover, while reasonable jurists might differ as to whether those facts justified the imposition of terminating sanctions, Section 1292(b) requires more than simply disagreement with the court's conclusion."). Similarly, as for the decision to require the Browns to produce the "federal contracts" for *in camera* review, the Browns haven't identified any controlling authority establishing that this fact-bound ruling was incorrect. In addition, the Browns failed to acknowledge that a different judge previously ordered them to produce this material.

IT IS ORDERED directing the Clerk of Court to close this case.

Dated this 23rd day of January, 2019.

_____
Dominic W. Lanza
United States District Judge